

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07 C 3648 |
| v. | ) ) ) | Magistrate Judge Martin C. Ashman |
| SMELTZER ENTERPRISES INCORPORATED d/b/a WHITE TOWER INDUSTRIAL LAUNDRY & CLEANERS, a Michigan corporation, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, trustee ("Central States"), ask the Court to grant summary judgment in this case arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). Central States alleges that there is no genuine issue of material fact in this case and that, as a matter of law, it is entitled to a judgment on its claim that Defendant, Smeltzer Enterprises, Inc. ("Smeltzer"), owes delinquent monthly pension fund contributions pursuant to a collective bargaining agreement as well as interest on those delinquent contributions. The parties have consented pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 to have this Court conduct any and all proceedings in this case, including the entry of final judgment. For the reasons that follow, Central States' motion for summary judgment is granted.

## I. Background

The relevant facts in this ERISA pension fund case are relatively simple. Central States is an employee benefit plan and trust funded by contributions from multiple employers pursuant to collective bargaining agreements between the employers and local unions affiliated with the International Brotherhood of Teamsters. (Compl., ¶ 5.) Smeltzer is a Michigan corporation and an "employer" for the purposes of ERISA. (Compl., ¶ 9; Ans., ¶ 9.) Smeltzer entered into a collective bargaining agreement ("CBA") with Teamsters Local Union 51 that covered the period from June 3, 2000, through June 4, 2006. (Pls.' LR 56.1 Stmt., ¶ 1.) Under the CBA, Smeltzer was obligated to make contributions to Central States on behalf of each employee covered by the CBA. (*Id.*, at ¶ 2.) Smeltzer also entered into a Participation Agreement with Central States and Teamsters Local 285 (which later merged with Teamsters Local 51) requiring contributions to Central States on behalf of Smeltzer's union employees. (*Id.* at ¶ 4.) The Participation Agreement provided that it would continue indefinitely unless Central States received notice by certified mail that Smeltzer was no longer under a legal duty to make contributions to Central States. (*Id.* at ¶ 6.) The terms of Smeltzer's relationship with Central States were further defined in a Pension Fund Trust Agreement. (*Id.* at 5.) The Trust Agreement provides for interest and/or liquidated damages to be paid by Smeltzer in the event of delinquent contributions. (*Id.* at ¶ 22.)

The CBA expired, per its terms, on June 4, 2006. Central States asserts that it never received written notification from Smeltzer stating that Smeltzer's obligation to make contributions on behalf of its employees had terminated. (Pls.' LR 56.1 Stmt., at ¶ 7.) In support of this assertion, Central States provides a sworn affidavit from its manager of collections. (Pls.' Mem., Ex. C.) Smeltzer asserts that it provided the notice required under the agreement in

February 2006. (Def.'s Resp., at 3.) Smeltzer continued to self-report its employees' work histories to Central States from November 2006 through May 2007. (Compl., at ¶ 16; Ans., at ¶ 16.) On June 28, 2007, Central States filed its complaint, seeking to collect delinquent contributions and interest. After this suit was filed, Smeltzer continued to make payments to Central States in July and September 2007. (Pls.' LR 56.1 Stmt., at ¶ 9.) During the period from March 2007 through August 2007, four employees who were covered by the CBA continued to work for Smeltzer. (*Id.*, at ¶ 12.)[1]

## II. Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Dribeck Importers, Inc. v. G. Heileman Brewing Co., Inc.*, 883 F.2d 569, 573 (7th Cir. 1989) (internal citation omitted). In deciding a motion for summary judgment, the Court views the facts in the light most favorable to

---

[1] In its response to Central States' Local Rule 56.1 statement of facts, Smeltzer acknowledges that the individuals specified by Central States continued to work for Smeltzer but denies that they were performing work that was subject to the CBA. (Def.'s Resp., at 3.) However, Central States asked Smeltzer to admit that the four employees were performing work covered by the CBA in a request to admit propounded on August 27, 2007, to which Smeltzer never replied. Because more than 30 days have expired without a reply, the facts contained in Central States' requests for admission are deemed admitted under Federal Rule of Civil Procedure 36(a)(3). A default admission pursuant to Rule 36 cannot later be attacked in resisting a motion for summary judgment. *U.S. v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).

the non-moving party. *Regner v. City of Chi.*, 789 F.2d 534, 536 (7th Cir. 1986). However, the fact that there is a dispute as to some facts does not preclude summary judgment; rather, only factual disputes that might affect the outcome of the case are taken into account at the summary judgment stage. *Derrico v. Bungee Int'l Mfg. Co.*, 989 F.2d 247, 250 (7th Cir. 1993).

### A. There is no genuine issue of material fact and Central States is entitled to a judgment as a matter of law.

It is apparent from the facts set forth above that Central States is entitled to a judgment for the delinquent contributions owed by Smeltzer. Smeltzer acknowledges that it entered into a contract under which it was obligated to make contributions to Central States on behalf of its employees whose employment was governed by the CBA. Smeltzer also acknowledges that the contract required written notification to Central States in order to terminate Smeltzer's obligation to make contributions. Smeltzer contends that it complied with this notice provision, relying on a letter that it sent to Teamsters Local 51 notifying the union of its intent to terminate the CBA. (Def.'s Resp., at 2.) As further proof of this theory, Smeltzer points to two letters written by Central States that, in Smeltzer's view, show that Central States was aware of Smeltzer's intent to withdraw from the pension plan. For the reasons discussed below, Smeltzer's evidence is insufficient to create a genuine issue of material fact as to whether it complied with the notice provision of the contract with Central States. Therefore, the Court finds as a matter of law that the contract was not terminated, and that Smeltzer remained obligated to make the contributions Central States seeks to recover in this lawsuit.

### B. Smeltzer cannot rely on inadmissible evidence to resist summary judgment.

In opposing Central States' motion for summary judgment, Smeltzer acknowledges that it was obligated to make contributions to Central States under its CBA with Teamsters Local 51. However, Smeltzer asserts that Central States knew in February 2006 that Smeltzer was terminating the CBA. (Def.'s Mem., at 2-3.) According to Smeltzer, Central States' awareness that the CBA was being terminated satisfied the notice provision of the contract between Central States and Smeltzer and ended Smeltzer's obligation to make contributions to Central States once the CBA expired in June 2006. (*Id.*)

Smeltzer offers three pieces of evidence in support of its theory. Exhibit 1 to Smeltzer's memorandum is a document that purports to be a copy of a letter from Vincent F. LoCicero, Attorney at Law, to Teamsters Local 51. In the letter, dated February 8, 2006, Mr. LoCicero says that he is Smeltzer's attorney and that he is giving the Teamsters notice of termination of the CBA effective June 4, 2006. (Def.'s Mem., Ex. 1.) Smeltzer (but not Central States) is "cc'ed" at the bottom of the page. (*Id.*) Smeltzer also offers two documents that purport to be letters from Central States to Smeltzer and Teamsters Local Union 51. (Def.'s Mem., Ex. 2, 3.) The first letter informs Smeltzer and the union that Central States will require either an "acceptable renewal agreement" or a "Fringe Benefit Contribution Agreement" to be filed by June 30, 2007, for all collective bargaining agreements that expired prior to 2007. (Def.'s Mem, Ex. 2.) The second letter informs them that, because neither document referred to in the previous letter was received, Central States will impose a predetermined eight-percent rate increase on Smeltzer's required contributions. (Def.'s Mem., Ex. 3.)

The proponent of documentary evidence, such as a letter, has the burden of laying an appropriate foundation of "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Ev. 901(a). Smeltzer has provided photocopies of letters and made allegations about what they are without providing any foundational testimony that could establish the authenticity of the documents. While Central States objects that the letters are required by Federal Rule of Civil Procedure 56(e) to be "sworn or certified," the problem is more fundamental: the certification requirement of Rule 56(e) applies to "all papers or parts thereof referred to in an affidavit," but here there are no affidavits at all. In the complete absence of any foundation, the letters are clearly inadmissible.

It is well established that "the evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chi.*, 496 F.3d 645, 651 (7th Cir. 2007). The letters that Smeltzer relies on to create a genuine issue of material fact as to the termination of its obligation to make pension contributions to Central States are inadmissible. Because Smeltzer has no competent evidence that would allow a jury to find in its favor, there is no genuine issue of material fact and Central States is entitled to summary judgment.

### C. Even if it were admissible, Smeltzer's evidence would not create a genuine issue of material fact.

In deciding a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-movant's favor. *Regner*, 789 F.2d at 536. A genuine issue of fact exists only where there is evidence

supporting the non-movant that would allow a reasonable jury could find in the non-movant's favor. *Dribeck*, 883 F.2d at 573. Even if Smeltzer's evidence were admissible, there would still be no basis upon which a reasonable jury could find in Smeltzer's favor in this case. Therefore, Smeltzer's evidence is insufficient to create a genuine issue of material fact and insufficient to oppose Central States' motion for summary judgment.

The first letter—purporting to be a notice of termination sent by Smeltzer's attorney to Teamsters Local 51—does not help Smeltzer. Smeltzer's contract with Central States provided that the contract would remain in effect until *Central States* received written notice that Smeltzer was no longer under an obligation to make contributions. (Pls.' LR 56.1 Stmt., ¶ 6.) As common sense suggests and Supreme Court precedent confirms, a union (in this case, Teamsters Local 51) and its pension fund (in this case, Central States) are separate legal entities with separate purposes and interests. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 576-77 (1985). As Central States points out, the trust agreement between Central States and Smeltzer in this case expressly provides that "[n]o Employer or Union . . . is authorized to interpret the Pension Plan, nor can any such person act as agent of the Trustees." (Pls.' LR 56.1 Stmt., Ex. B at Art. II, Sec. 10.) Without any suggestion that Teamsters Local 51 was ever authorized to act as Central States' agent, or evidence that Central States ever received the letter, the fact that Smeltzer gave notice to the Union says nothing about whether Smeltzer gave written notice to Central States.

The two letters that Smeltzer claims to have received from Central States are similarly lacking in probative value. First, as discussed above, the Participation Agreement between Central States and Smeltzer requires written notice of termination by certified mail. Therefore,

even if Central States became subjectively aware of Smeltzer's intent to terminate their relationship, it is not clear that this knowledge would have any legal effect absent proper notice. The Court need not decide this point, however, because nothing in the letters from Central States to Smeltzer creates an inference that Central States knew of Smeltzer's intent to cease making contributions.

The first letter, dated March 26, 2007, informs Smeltzer and Teamsters Local 51 that Central States has adopted a new rule applicable to CBAs that expired prior to 2007. (Def.'s Mem., Ex. 2.) The new rule requires the parties to the CBA to file a "renewal agreement" or a "Fringe Benefit Contribution Agreement" (FCBA) by June 30, 2007. (*Id.*) The letter states that agreements filed after June 30, 2007, will be "required to include revised pension contribution rates using the higher 8% increase rate schedule," and indicates that filing an FCBA by June 30, 2007, will allow the parties to "lock in" the lower 2006 rate schedule. (*Id.*) Nothing about this letter suggests that Central States was aware of Smeltzer's intent to terminate its contributions when the CBA expired on June 4, 2006. If anything, the letter contemplates an ongoing relationship even though it acknowledges that the CBA between Smeltzer and the union has already terminated. Why else would Central States have sent a letter informing the parties to the CBA of policies that would affect them after June 30, 2007, more than a year after the CBA expired? The second letter, dated July 31, 2007, indicates that the June 30th deadline has passed and that Central States has not received a new agreement or an FCBA. (*Id.*, Ex. 3.) Therefore, the letter states, "the contribution rates required for this bargaining unit *are now*" higher. (*Id.* (emphasis added).) This too indicates that Central States continued to believe that its relationship with Smeltzer was ongoing.

There is no dispute that Smeltzer's liability for contributions to Central States could only be terminated by written notice to Central States. The three letters that Smeltzer relies on in opposing summary judgment are insufficient as a matter of law to support an inference that Central States received the required notice. Furthermore, Smeltzer's actions in continuing to report its employees' work history after June 2006 and in making payments to Central States as recently as September 2007 indicate that Smeltzer believed its duty to contribute had not been terminated. *See Laborers' Pension Fund v. E. Guerra Co.*, No. 99 C 4085, 2000 WL 1349148, at *4 (N.D. Ill. September 14, 2000) (holding that an employer's course of conduct in contributing to pension funds after putative withdrawal manifested an intent to continue to be bound by a collective bargaining agreement).

Even if the Court were to ignore the clear inadmissibility of Smeltzer's letter evidence, there would be no facts upon which a reasonable jury could find in Smeltzer's favor in this case. Therefore, there is no genuine issue of material fact. Central States has sustained its burden of showing that it is entitled to judgment as a matter of law.

### D. The amount of damages must be briefed more fully.

While the Court finds that Smeltzer never gave notice of termination and that Central States is entitled to summary judgment on the issue of Smeltzer's liability for delinquent contributions, the Court declines to issue an order regarding the amount of damages on the record as it currently stands. As noted above, the Pension Fund Trust Agreement provides for attorneys' fees as well as interest on delinquent contributions. Central States included a calculation of damages in its motion, but it is unclear whether this amount has since increased, either due to

accrued interest or additional work performed by employees covered by the CBA. Furthermore, Smeltzer's filings do not address the issue of damages at all. In light of this lack of clarity, and in the interest of allowing Smeltzer to address the amount of its obligation to Central States, the Court directs Central States to file a motion within fourteen (14) days detailing its total damages. Smeltzer will have fourteen (14) days to respond to Central States' motion if it desires to do so. Central States will have an additional seven (7) days to reply, after which the Court will rule on the issue of damages.

### III. Conclusion

For the reasons set forth above, Central States' motion for summary judgment is granted as to the issue of liability. The issue of damages will be decided separately in accordance with the briefing schedule set forth above.

**ENTER ORDER:**

MARTIN C. ASHMAN
United States Magistrate Judge

Dated: December 12, 2007.